UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF IOWA
DES MOINES DIVISION

| | |
|---|---|
| IN RE:<br><br>SHAWN M WEST AND<br>ALISON L FUNCK WEST<br><br>DEBTORS. | BANKRUPTCY NO. 19-00494-lmj13<br><br>MOTION FOR RELIEF<br>FROM AUTOMATIC STAY |

COMES NOW Freedom Mortgage Corporation(hereinafter "Creditor"), by and through its attorneys, The Sayer Law Group, P.C., and respectfully states to the Court the following in support of its Motion for Relief from Stay:

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 157(b)(2)(G) and 11 U.S.C. Section 362.

2. Shawn M West and Alison L Funck West ("Debtors") filed a Petition in this Court under Chapter 13 of the United States Bankruptcy Code on or about 03/15/2019. The Debtors listed in Debtors' schedules an interest in the real property situated in Polk County, locally known as 1660 NW 99th Ct., Clive, IA 50325, and legally described as follows:

   > Lot 67 in Indian Hills Plat No. 5, an Official Plat, now included in and forming a part of the City of Clive, Polk County, Iowa.

   (hereinafter referred to as the "Property")

3. Creditor is the holder of a secured claim against the Property in the sum of $214,412.56, which is the principal balance of $203,717.65, interest to 09/30/2019 in the amount of $6,079.91 and thereafter at the rate of 4.000% per annum, escrow advance of $4,248.00, bankruptcy attorney fees of $850.00, bankruptcy attorney costs of $181.00, recording fees of $7.00, and additional items due of $360.00, all by virtue of making a Purchase Money Mortgage dated 05/22/2017 and a Note of even date. A copy of the Note with Allonge are attached hereto as Exhibit "A" and a copy of the Mortgage and Assignment are attached hereto as Exhibit "B".

4. Creditor does not have and has not been offered adequate protection for its interest in and to the Property. The Debtor has failed to make the following payments and owes the following,

post-petition amounts:

| 5 Payments 05/01/2019 - 09/01/2019 @ $1,537.90 each | = $7,689.50 |
|---|---|
| Less: Suspense Balance | =( $176.27) |
| Total Post-Petition Arrearage | = $7,513.23 |

5.    The Debtors have defaulted on the post-petition payments due to Creditor.

6.    If Creditor is prevented from proceeding with the foreclosure action of its Mortgage in and to the Property, it will suffer irreparable injury, loss and damage. Documentation provided is in support of right to seek a lift of stay and foreclose if necessary.

7.    The Order sustaining this Motion should provide that it is effective immediately upon entry and that the fourteen-day stay provided for in Bankruptcy Rule 4001(a)(3) shall not apply.

WHEREFORE, Creditor, its successors and assigns, respectfully request that upon final hearing on this Motion for Relief from Stay and pursuant to 11 U.S.C. Section 362(d), the stay be modified to permit Creditor its successors and assignees, to proceed with the foreclosure on the Property and for such other and further relief as it is just and equitable in the circumstances.

Dated: September 16 , 2019

Respectfully submitted,
THE SAYER LAW GROUP, P.C.

C. Anthony Crnic
License/Bar Number: AT0009864
925 E. 4th St
Waterloo, IA 50703-3925
Telephone: 515-650-3003
Facsimile: 319-232-6341
E-mail: tcrnic@sayerlaw.com
E-mail: bankruptcy@sayerlaw.com
Attorney for Freedom Mortgage Corporation

Copies to:

Shawn M West
Alison L Funck West
1660 NW 99th Ct
Clive, IA 50325
*Debtor(s)*

Samuel Z. Marks
4225 University Ave.
Des Moines, IA 50311
*Attorney for Debtor(s)*

Carol F. Dunbar
531 Commercial Street, Ste. 500
Waterloo, IA 50701
*Chapter 13 Trustee*

Deanna R Bachman
505 5th Ave., Ste. 406
Des Moines, IA 50309
*Attorney for Trustee*

United States Trustee
Federal Bldg., Room 793
210 Walnut St.
Des Moines, IA 50309
*U.S. Trustee*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all above named parties to the above cause on September 16 , 2019 by depositing separate copies thereof, together with all supporting documents or exhibits referenced therein, in a United States Post Office depository in Waterloo, Iowa enclosed in sealed envelopes with proper postage affixed thereto and addressed to each of the attorneys of record at his or her respective address as disclosed by the pleadings, or where no attorney so appears, to the party at his or her last known address unless in default for failure to appear; and where applicable, by electronic mailing to such parties or their attorneys, as the case may be, via CM/ECF, without copies of supporting documents or exhibits.

*/s/ Alessandra Adderley*
Alessandra Adderley

# EXHIBIT

# "A"

# NOTE

MIN:

FHA Case No:

| May 22, 2017 | West Des Moines | Iowa |
|:---:|:---:|:---:|
| *[Date]* | *[City]* | *[State]* |

**1660 NW 99TH CRT, CLIVE, IA 50325**
*[Property Address]*

**1.      PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **New York Community Bank** and its successors and assigns.

**2.      BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Two Hundred Nine Thousand Six Hundred Thirty Two and 00/100ths** Dollars (U.S. **$209,632.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Four and 00/1000ths** percent (**4.000%**) per year until the full amount of principal has been paid.

**3.      PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.      MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **July 1, 2017**. Any principal and interest remaining on the first day of **June, 2047**, will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at **P.O Box 742579, Cincinnati, OH  45274-2579** or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of **$1,000.82**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge          ☐ Growing Equity Allonge          ☐ Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**
   **(A) Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four and 00/1000ths** percent (**4.000%**) of the overdue amount of each payment.
   **(B) Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.
   **(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. **WAIVERS**
Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
**Shawn West**                    -Borrower

_____ (Seal)
**Alison West**                    -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*[Sign Original Only]*

# ALLONGE TO NOTE

**Loan  #** ████████

**Allonge to one certain Note dated:**  5/22/2017

**In the Principal Amount:**        $209,632.00

**And executed by:**  Shawn  West

**Property address:**  1660 NW 99TH CRT

              CLIVE, IA 50325


          **Pay to the order of**


          **without recourse**

**By:  New York Community Bank**

          **Christine Sekerak**

          **Authorized Employee**

# EXHIBIT "B"

Doc ID:    031924410010 Type: GEN
Kind: MORTGAGE
Recorded: 05/23/2017 at 02:39:20 PM
Fee Amt: $52.00 Page 1 of 10
Polk County Iowa
JULIE M. HAGGERTY RECORDER
File# 2016-00096730

BK **16490** PG **829-838**

RETURN TO:

**After recording please return to:**
**New York Community Bank Final**
**Documents Department**

**1801 East 9th Street, Mail Code OH99-**
**0401**
**Cleveland, Ohio  44114-3516**

**This instrument was prepared by:**



**New York Community Bank**

**1801 East Ninth Street Suite 200**

**Cleveland, OH  44114**

**THIS IS PURCHASE MONEY**
**MORTGAGE AS DEFINED BY**
**IOWA CODE SECTION 654.12B**

————————————— *[Space Above This Line For Recording Data]* —————————————

FHA Case No

Loan Number:

MIN:

# IOWA MORTGAGE

Name of Grantor(s) (also referred to as Borrower):  **Shawn West and Alison West, Husband and Wife**

Address of Grantor(s): **1660 NW 99TH CRT, CLIVE, IA  50325**

Name of Grantee (also referred to as Lender): **New York Community Bank**

Address of Grantee:  **1801 East Ninth Street Suite 200, Cleveland, OH  44114**

Legal Description of Property: See page 10

Page 1 of 9

THIS MORTGAGE ("Security Instrument") is given on **May 22, 2017**. The mortgagor is **Shawn West and Alison West, Husband and Wife** ("Borrower"). This Security Instrument is given to **New York Community Bank**, which is organized and existing under the laws of **State of New York**, and whose address is **1801 East Ninth Street Suite 200, Cleveland, OH 44114** ("Lender"). **Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026**, tel. ████████

████ Borrower owes Lender the principal sum of **Two Hundred Nine Thousand Six Hundred Thirty Two and 00/100ths** Dollars (U.S. **$209,632.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **June 1, 2047**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **Polk** County, Iowa:

**See Attached Exhibit A**

Tax Parcel ID No.:
which currently has the address of **1660 NW 99TH CRT**
                              [Street]

|                   |                       |                        |
|-------------------|-----------------------|------------------------|
| **CLIVE**         | , Iowa **50325**      | ("Property Address"):  |
| [City]            | [Zip Code]            |                        |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
  **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
  **2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the

Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for time unanticipated disbursements or disbursements before Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order of Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    **5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear expected. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

    Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

      (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

      (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c)

agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceedings and invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender forecloses this Security Instrument, Lender shall give notice in the matter required by applicable law to Borrower and any other persons prescribed by applicable law. Lender shall provide Borrower a notice of the right to cure prior to requiring immediate payment in full, as required by Iowa law. Lender shall also publish the notice of sale, and the Property shall be sold, as prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the manner prescribed by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge such person or persons a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Waivers.** Borrower relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Borrower waives any right of exemption as to the Property.

21. **HOMESTEAD EXEMPTION WAIVER. I UNDERSTAND THAT HOMESTEAD PROPERTY IS IN MANY CASES PROTECTED FROM THE CLAIMS OF CREDITORS AND EXEMPT FROM JUDICIAL SALE; AND THAT BY SIGNING THIS CONTRACT, I VOLUNTARILY GIVE UP MY RIGHT TO THIS PROTECTION FOR THIS PROPERTY WITH RESPECT TO CLAIMS BASED UPON THIS CONTRACT.**

| | |
|---|---|
| _(signature)_     5/22/17 | _(signature)_     5/22/17 |
| **Shawn West**     (Borrower) (Date) | **Alison West**     (Borrower) (Date) |
| [Printed Name] | [Printed Name] |
| | |
| (Borrower) (Date) | (Borrower) (Date) |
| [Printed Name] | [Printed Name] |

22. **Redemption Period.** If the Property is less than 10 acres in size and Lender waives in any foreclosure proceeding any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 6 months. If the court finds that the Property has been abandoned by Borrower and Lender waives any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 60 days. The provisions of this Paragraph 22 shall be construed to conform to the provisions of Sections 628.26 and 628.27 of the Code of Iowa.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider      ☐ Graduated Payment Rider
☐ Planned Unit Development Rider      ☐ Growing Equity Rider
☐ Other [specify]

The following signature(s) and acknowledgment(s) are incorporated into and made a part of this Iowa Mortgage dated **May 22, 2017** between **Shawn West and Alison West, Husband and Wife**, and **New York Community Bank**.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)      _____ (Seal)
**Shawn West**           -Borrower      **Alison West**           -Borrower
                 [Printed Name]                  [Printed Name]


_____ (Seal)      _____ (Seal)
                     -Borrower                        -Borrower
                 [Printed Name]                  [Printed Name]

## ACKNOWLEDGMENT

State of Iowa §
§
County of Polk §

This instrument was acknowledged before me on May 22, 2017 by
**Shawn West and Alison West.**

_____
Signature Of Person Taking Acknowledgment

Shannen L. Sobek
_____
Printed Name

Notary Public
_____
Title or Rank

Serial Number, if any:

My Commission Expires: 7/31/19

(Seal)

**Loan Originator Organization: LincolnWay Community Bank, NMLSR ID:** ▮▮▮▮
**Individual Loan Originator's Name: John Joseph Lerose, NMLSR ID** ▮▮▮▮

## LEGAL DESCRIPTION

Lot 67 in Indian Hills Plat No. 5, an Official Plat, now included in and forming a part of the City of Clive, Polk County, Iowa.

/o

**Recorded: 12/19/2017 at 9:42:57.0 AM**
**Fee Amount: $7.00**
**Revenue Tax:**
**Polk County, Iowa**
**Julie M. Haggerty RECORDER**
**Number: 201700050244**
**BK: 16764 PG: 902**

Document Prepared By: ▓▓▓▓▓▓▓▓Freedom Mortgage Corporation 907 Pleasant
Valley Ave., Suite 3 Mount Laurel, NJ, 08054▓▓▓▓▓▓

Return By Mail To:

▓▓▓▓▓▓
Freedom Mortgage Corporation
907 Pleasant Valley Ave., Suite 3
Mount Laurel, NJ 08054

## CORPORATE ASSIGNMENT OF MORTGAGE

Polk, Iowa
SELLER'S SERVICING #: ▓▓▓▓▓▓

MIN #: ▓▓▓▓▓        SIS #: ▓▓▓▓▓▓

Date of Assignment: December 12th, 2017
Assignor: Mortgage Electronic Registration Systems, Inc., solely as nominee for New York Community Bank, its
successors and assigns at P.O. Box 2026, Flint, MI 48501-2026
Assignee: Freedom Mortgage Corporation at 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ 08054

Executed By: Shawn West and Alison West, Husband and Wife  To: Mortgage Electronic Registration Systems, Inc.,
solely as nominee for New York Community Bank, its successors and assigns
Dated: 05-22-2017 Recorded: 05-23-2017 as Instrument No. 2016-00096730, Book/Reel/Liber 16490, Page/Folio
829  In the County of Polk, State of Iowa.

Property Address: 1660 NW 99TH CRT, CLIVE, IA 50325

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
having an original principal sum of $209,632.00 with interest, secured thereby, and the full benefit of all the powers
and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the
said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

Mortgage Electronic Registration Systems, Inc., solely as nominee for New York Community Bank, its successors and
assigns
On _____ 12/14/17

By: _____ Assistant Secretary
        Shannon Dinkel

STATE OF PA
COUNTY OF Montgomery

On __12/14/17__, before me, __James K. Minshall__, a Notary Public in
and for Montgomery County in the State of PA, personally appeared, Shannon Townsend, Assistant
Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____                                    (This area for notarial seal)
James K. Minshall

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
James K. Minshall, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Oct. 29, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

| IN RE: | BANKRUPTCY NO. 19-00494-lmj13 |
|---|---|
| SHAWN M WEST AND<br>ALISON L FUNCK WEST<br>                DEBTORS. | MEMORANDUM IN SUPPORT OF<br>MOTION FOR RELIEF FROM<br>AUTOMATIC STAY |

COMES NOW Freedom Mortgage Corporation, by and through its attorneys, The Sayer Law Group, P.C., and respectfully states to the Court the following as its Memorandum in support of its Motion for Relief from Stay:

## STATEMENT OF RELEVANT FACTS

The Debtors filed the Chapter 13 action on 03/15/2019. Paragraph 4 of the Motion sets forth the history of payment on the Debtors' loan with Movant since the date of the Chapter 13 filing. The contents of the Motion are incorporated herein by this reference.

## ARGUMENT

The Movant is entitled to relief from the automatic stay for "cause". Whether or not the interest of the mortgage lender is adequately protected, and the failure of the debtor to make the post-confirmation payments called for in the confirmed Chapter 13 Plan of Reorganization may constitute "cause" for relief from stay under Section 362(d)(1). E.g., In Re Ellis, 60 B.R. 432, 435 (9th Cir. B.A.P. 1985). The court in In re Kim, 71 B.R. 1001 (Bankr.C.D. Cal. 1987) discussed the relative burdens of the debtor and mortgage lender in the case of a motion for relief from stay for "cause". The court stated:

> Where, as here, relief from stay is grounded in cause, based on lack of post-confirmation maintenance payments, the moving creditor must establish a prima facie case supporting the cause for relief from automatic stay. Such a prima facie case must include: (1) a showing of an obligation owing by the debtor to the creditor; (2) a valid security interest as to which relief from stay is sought ... (3) the cause justifying relief from stay, such as the post-petition or post-confirmation default.

Id. at 1016. Upon the mortgage holder's establishment of its prima facie case, the burden of proof shifts to the debtor. Id. at 1015.

In In Re Kim, the moving creditor had failed to demonstrate its prima facie case, so the court

continued the hearing on the motion so that the evidence could be proved. Id. at 1017. In In re Ellis, the court held that the Chapter 13 debtor's failure to make seven post-confirmation payments was held to be cause for lifting the stay. In re Ellis, 60 B.R. 432, 435. In In re Quinlan, 12 B.R. 516 (Bankr.W.D. Wisc. 1981), the confirmation Chapter 13 Plan of the debtor provided for direct mortgage payments to the holder of the first mortgage. The debtor defaulted on those payments and the court noted:

> Debtor's unexcused failure to make those payments constitutes a material default on a term of her plan ...

> A material default by the debtor with respect to a term of a confirmed plan is a listed and specified ground on which to convert or dismiss the Chapter 13 case under 11 U.S.C. § 1307(c)(5). Conversion or dismissal are much more severe consequences for the default than the remedy sought by Banco. The effect of dismissal would be lifting of any stay.

Id. at 517. The court recognized that the debtor may not withhold post-confirmation payments "with impunity" even where the mortgage is adequately protected. The court held that the Quinlan case was a case in which the failure to make the payments was "cause" for relief.

In In re Davis, 64 B.R. 358 (S.D.N.Y. 1986), the debtors were 6 months in arrears on their post-confirmation payments. The Davis case likewise found that the question of whether the debtors had equity in the house was not relevant to whether the arrears were "cause" for relief under § 362(d)(1). The court stated that the mortgagee was entitled to relief on the obligation of the debtors to make the post-confirmation payments. Id. at 360. The debtors were given 10 days to cure the defaults or the stay would be automatically lifted. Id. at 360.

In In re Elmore, 94 B.R. 670, 678 (Bankr. C.D. Cal. 1988) the court likewise found that post-confirmation defaults may be "cause" for relief. The court stated:

> The cause is the material breach of a term of the plan, and not the lack of adequate protection.

In Elmore, the debtor was in arrears with respect to 18 post-confirmation monthly payments. Id. at 678. The mortgagee, however, had failed to move for relief based on those defaults as "cause". (It has argued only the lack of adequate protection as cause). Id. at 679. The court continued the hearing to allow the mortgagee to argue and prove a claim for relief based on the post-confirmation defaults as cause. Id. at 679.

## CONCLUSION

The post-petition arrearage by the Debtors in this case is "cause" for relief from automatic stay. Movant has demonstrated a prima facie case for the grant of relief from stay based on the defaults. If not cured by the date of the hearing on the Motion this Court should sustain the Motion for Relief from Stay and grant the modification of the stay sought by Movant.

Dated: September _16_, 2019

Respectfully submitted,
THE SAYER LAW GROUP, P.C.

C. Anthony Crnic
License/Bar Number: AT0009864
925 E. 4th St
Waterloo, IA 50703-3925
Telephone: 515-650-3003
Facsimile: 319-232-6341
E-mail: tcrnic@sayerlaw.com
E-mail: bankruptcy@sayerlaw.com..
Attorney for Freedom Mortgage Corporation

---

--

Shawn M West

Alison L Funck West

1660 NW 99th Ct

Clive, IA 50325

*Debtor(s)*

Samuel Z. Marks

4225 University Ave.

Des Moines, IA 50311

*Attorney for Debtor(s)*

Carol F. Dunbar

531 Commercial Street, Ste. 500

Waterloo, IA 50701

*Chapter 13 Trustee*


Deanna R Bachman

505 5th Ave., Ste. 406

Des Moines, IA 50309

*Attorney for Trustee*


United States Trustee

Federal Bldg., Room 793

210 Walnut St.

Des Moines, IA 50309

*U.S. Trustee*


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all above named parties to the above cause on September 16, 2019 by depositing separate copies thereof, together with all supporting documents or exhibits referenced therein, in a United States Post Office depository in Waterloo, Iowa enclosed in sealed envelopes with proper postage affixed thereto and addressed to each of the attorneys of record at his or her respective address as disclosed by the pleadings, or where no attorney so appears, to the party at his or her last known address unless in default for failure to appear; and where applicable, by electronic mailing to such parties or their attorneys, as the case may be, via CM/ECF, without copies of supporting documents or exhibits.


*/s/ Alessandra Adderley*

Alessandra Adderley